THE STATE ex rel. MERRIAM v. ROSS, Judge, et al.

In Banc, December 1, 1896.

1. Supreme Court: PROHIBITION: RECEIVER. On an application to it for a writ of prohibition to prohibit the prosecution of a suit for the appointment of a receiver of a corporation, the supreme court will not determine the validity of the appointment of the receiver in another suit nor prohibit another application to a different court for the appointment of a receiver and the foreclosure of a mortgage on the property in controversy.

2. ———: ———: ———: CONTEMPT. Such persons so prosecuting in a different court on application for a receiver are not in so doing guilty of contempt of the supreme court.

3. Deed of Trust: FORECLOSURE: TENDER. Tender before foreclosure sale under a deed of trust of the interest due on the debt without the principal is sufficient to stop the sale by the trustee, and this is true although the deed provides that in case of failure to pay the interest the entire debt, principal and interest, shall mature and the property be sold to pay the same. (Phillips v. Bailey, 82 Mo. 639.)

*Original Proceeding for Contempt.*

RULE DISCHARGED.

*Martin L. Clardy* for relator.

The court should sustain the motion now pending for a writ directed to its marshal requiring him to seize the railroad in controversy and to turn it over to the receiver *de jure* and should also compel by attachment Louis Houck to deliver to such receiver the books, papers, etc., of the company. 2 Spelling's Extraordinary Relief, sec. 1762; *Havemeyer v. Superior Court*, 84 Cal. 327; *State v. Court of Appeals*, 97 Mo. 276; *Thomas v. Mead*, 36 Mo. 246; *Rickey v. Superior Court*, 59 Cal. 661; High's Legal Remedies, p. 625, sec. 804; *State v. Hungerford*, 8 Wis. 845; Lloyd on Prohibition, p. 67; *State ex rel. v. Elkins*, 130 Mo. 90; *State ex rel. v. Rombauer*, 105 Mo. 103. "Whenever a court acquires jurisdiction over property and holds it subject to judicial proceedings, it will not suffer its possession to be unlawfully disturbed or quietly submit to being deprived by unlawful means of its power to proceed, but will protect that jurisdiction by a summary process of attachment for contempt." *Huntington v. McCann*, 48 Conn. 199; *Busch v. Mundy*, 5 Madd. 184; *Mead v. Merritt*, 2 Paige, 402. This court has, in this proceeding, already determined the question as to the right of the circuit court of Iron county, through its legally appointed receiver, to the possession of the property in dispute. If the decision of this court constituted the full measure of remedial justice to which relator is entitled, and if this court, the highest in the state, has no power to effectually enforce its decisions and orders, then the administration of justice becomes a mockery. It is true that the general doctrine on the

subject is a preventive, and not a remedial, proceeding, but it is equally well settled by the authorities that, in a case where a superior court can properly take steps to prevent an inferior one from accomplishing a certain purpose, it is also entirely proper that the superior court should at any stage of the proceeding not only prohibit the doing of acts in the future, but also cause to be canceled and annulled such acts as have already been done towards the accomplishment of the purpose which the superior court is endeavoring to prohibit. This is the rule announced in the case of *State ex rel. v. Rombauer,* 105 Mo. 103.

*M. R. Smith* and *R. B. Oliver* for respondents.

(1) At the time of the announcement of the decision of this honorable court in the prohibition case, there was no *de jure* receiver appointed by the Stoddard county circuit court, and no such receiver has since been appointed by such court to whom respondent, Louis Houck, could turn over said railway and its property, conceding that he had the power and was able to do so, notwithstanding his being the officer and under the control of the common pleas court. *Weeks v. Smith,* 3 Abb. Prac. 211; *McKelsey v. Lewis,* 3 Abb. (N. C.) 63; *Ross v. Butler,* 57 N. Y. 112; *Buffen's* case, 13 N. H. 14; *Berry v. Innes,* 35 Mich. 189; *Haines v. Haines,* 35 Mich. 143. (2) Eli Klotz's first appointment was vacated by the special circuit judge, elected to hold the regular March term of the Stoddard county circuit court, 1893, and his action was afterward affirmed twice by this court. *State ex rel. v. Ross,* 118 Mo. 42; *State ex rel. v. Ross,* 122 Mo. 453. (3.) The original petition under which said appointment was made was adjudged insufficient on application to vacate for the reason that the facts set up in the peti-

tion did not warrant the appointment of a receiver, and for other reasons; this application was sustained in all things, as is shown by respondents' return herein. No appointment thereafter could be made under said petition, because estopped by a former adjudication. *Gould v. Railroad*, 91 U. S. 533; *Bouchard v. Dias*, 3 Denio, 244; *Wells v. Moore*, 49 Mo. 229; Wells on Res Adjudicata, sec. 446. "Where any fact has been directly in issue and judicially passed upon, it is *res adjudicata*, no matter what the nature of it, and can not be subsequently adjudicated." 21 Am. and Eng. Ency. of Law, p. 252, and citations to note 4; *Gilstrap v. Felts*, 50 Mo. 428. (4) Judge Wear made, or attempted to make, the second appointment of Klotz, July 24, 1893, without notice in the face of applications for changes of venue (which appear by the respondents' return), which he had undertaken to overrule March 13, 1893, and of which all parties had notice. The second appointment was void for two reasons: made without notice, and made without jurisdiction, because disqualified. *State ex rel. v. Ross*, 118 Mo. 48, dissenting opinion by Judge SHERWOOD; *Barnes v. McMullins*, 78 Mo. 286; *Lacy v. Barnett*, 75 Mo. 469; *State v. Bulling*, 105 Mo. 211; *Scott County ex rel. v. Bacon*, 107 Mo. 634; *Neffzeiger v. Reed*, 98 Mo. 87; *Dowling v. Allen & Co.*, 88 Mo. 300. (5) Respondent Houck can not, we submit, turn over the possession of the railway and its property to the supposed receiver *de jure*, Eli Klotz, when it is not in his possession, but in the possession of the Cape Girardeau circuit court, and that without his asking and against his protest, as his return shows, nor can the marshal seize it out of the control of said circuit court, and turn it over to Eli Klotz, whose authority to receive it is clearly doubtful. *Havemeyer v. Superior Court*, 84 Cal. 389. "The possession of

the receiver is the possession of the court itself, etc.
Any interference with the receiver is a contempt of
court, and punishable by attachment." *Huntington v.
McMahan*, 48 Conn. 199. (6) The authorities are
clear that upon a party instituting proceedings to fore-
close a mortgage for the purpose of satisfying a debt,
that upon a full tender of the same, such proceedings
ought to be dismissed, and that it is not discretionary
with the court whether they shall be dismissed or not,
but the court may be compelled to dismiss them. This
court ought to decline to proceed further in this pro-
ceeding on account of tenders. 2 Jones on Mortgages,
sec. 1537; *Railroad v. Sutter*, 2 Wall. 510; *Davis v.
Marlborough*, 168; *Poynter v. Careed*, 18 Jer. 417;
Beach on Receivers, sec. 793. (7) Prohibition does
not draw to it the merits of the cause over which
jurisdiction is sought to be prohibited. High on
Extraordinary Legal Remedies, sec. 768, p. 554; 19
Am. and Eng. Ency. of Law, Prohibition, p. 234;
*State v. Hall*, 10 S. Rep. 196; *Thompson v. Tracey*, 60
N. Y. 35; *People v. Seward*, 7 Wend. 518. (8) There
was nothing, therefore, prohibiting either Doyle or
Houck individually appearing in another court of
general jurisdiction other than the Cape Girardeau
court of common pleas, and engaging in an ordinary
proceeding, subject to whatever questions that the
matter might give rise to be judicially disposed of in
the different lower tribunals, and not elsewhere. This
is the right of any citizen or person in the state, and is
guaranteed to each by the constitution of the state and
of the United States. (9) When Houck qualified as
receiver in the Cape Girardeau circuit court he did so
under an order that recognized and yielded to the
authority of the supreme court of Missouri to declare
the common pleas without jurisdiction, and which
superimposed the authority of the circuit court upon

the possession of the receiver under the common pleas court. It was an endeavor to save the property from loss from a sudden cessation of authority, and with no one authorized to receive it. Klotz, it had been decided, had no title under the original order appointing him, because this order had been revoked. *State ex rel. v. Ross, supra.*

*R. B. Oliver* for Leo Doyle, co-respondent.

(1) Respondent Doyle has strictly and literally obeyed the writ of prohibition issued by this court to the Cape Girardeau court of common pleas. Prohibition has but a restricted and limited office and can not be so enlarged as to bring within its scope incidental or collateral questions. See *Thomson v. Tracy*, 60 N. Y. 31; 2 Spelling on Extra Relief, pp. 1369 and 1399; High's Extra Legal Remedies [2 Ed.], sec. 763. (2) This court in this proceeding can not go into a trial of the merits of the controversy in the Cape Girardeau county circuit court. Its jurisdiction is not questioned here. The only object that respondent has in setting forth in his return the proceedings had in said Cape Girardeau county circuit court was and is to show this court the reasons for bringing the suit, and that the circuit court has taken cognizance of the respondents' suit therein, and is proceeding to adjudicate the issues there presented. It is a court of competent jurisdiction, and has the right to determine all matters in that controversy. *State v. Hall*, 10 S. Rep. 196; *Thomson v. Tracy*, 60 N. Y. 31. (3) The order of Judge Wear on July 24, 1893, in the vacation of the Stoddard county circuit court, in attempting to appoint Klotz receiver, was and is illegal and void. Motions for change of venue had been filed, based on the prejudice of the judge against the defendants and the undue

influence that was exerted by plaintiff, Merriam, over the judge, on the thirteenth of March, 1893. These motions were pending in the Stoddard county circuit court on the twenty-fourth of July, 1893. The judge of the circuit court knew of the existence of these motions. The counsel for relator knew of these motions. They attempted to destroy their legal effect on the thirteenth of March, 1893, and, therefore, had actual knowledge of their existence. While these motions were pending, neither the court nor the judge had the power to make an appointment of a receiver, or to do any act in that cause, except to act upon the motion for a change of venue. The jurisdiction of the judge was ousted. *Lacy v. Barnett*, 75 Mo. 469; *Barnes v. Mullens*, 78 Mo 260; *State ex rel. v. Bacon*, 107 Mo. 627. (4) By filing a motion to quash the return of Doyle, the relator has admitted all the facts and motions pleaded by Doyle. We submit, that upon this admission, the respondent should be discharged, which we now respectfully ask may be done. 2 Spelling's Extra Rel., secs. 1671, 1677; *State v. Weeks*, 77 Mo. 496; Kelley's Crim. Prac., note f, page 135; *Rex v. Sarmon,* 1 Burr. Rep. 516.

GANTT, P. J.—This is a proceeding commenced in this court looking to the punishment of Leo Doyle and Louis Houck for alleged contempt of this court. It grows out of and is supplementary to the case of *State ex rel. Merriam v. Ross*, commenced on twentieth day of July, 1893, and decided by this court March 24, 1894 (122 Mo. 435; 25 S. W. Rep. 947), wherein a writ of prohibition was granted forbidding said Ross, the judge of the Cape Girardeau court of common pleas, from further taking cognizance of an action or proceeding commenced in said court by the St. Louis, Cape Gi-

rardeau & Fort Smith Railway for the appointment of a receiver for said railway company.

After promulgation of the opinion and judgment of this court in *State ex rel. Merriam v. Ross*, a motion for rehearing was filed by the defendants in that case and overruled June 4, 1894. Pending the motion for rehearing the relator, on the tenth of April, 1894, filed suggestions for attachment in said cause against Leo Doyle and Louis Houck, and asked for a rule requiring them to show cause why they should not be punished for contempt of the writs, orders, and jurisdiction of this court, and upon the overruling of defendants' motion on said June 4, 1894, a citation was ordered directed against Houck and Doyle to show cause why they should not be punished for contempt of the prohibitory order of the chief justice of this court of date July 27, 1893, and in force during the pendency of that cause.

The citation was founded on a suggestion of the relator Merriam, that said Doyle as trustee had applied by petition in December, 1893, to the circuit court of Cape Girardeau county in an action wherein said Leo Doyle, trustee, was plaintiff, and St. Louis, Cape Girardeau & Fort Smith Railway Company, Edwin Hidden, trustee, and The Mercantile Trust Company of New York, trustee, were defendants, for a foreclosure of certain mortgages on said railway in which he was trustee; that the parties defendant in that suit had been duly brought before said circuit court and such proceedings had that said Louis Houck in February, 1894, had been appointed receiver of the railway and other property of said St. Louis, Cape Girardeau & Fort Smith Railway, subject to his prior appointment as receiver thereof by the Cape Girardeau court of common pleas. It further appeared from the exhibits filed that Houck had qualified as such receiver.

To the citation above mentioned Messrs. Doyle and Houck made a return on the eighteenth of June, 1894, and moved this court to quash the rule issued in that matter and to discharge them from further answer thereto. This return and motion for discharge were based substantially on the foregoing facts.

No further action was taken by this court upon said contempt proceeding until the October term, 1894. On the twenty-first day of March, 1895, a renewed application was made, based, however, on the same facts, accompanied by a motion for a writ of seizure of the railway property under the judgment in the original proceeding for prohibition and for the delivery of said property to the receiver appointed by the Stoddard county circuit court.

The motions of Houck and Doyle asking to be discharged from the original citation were filed at the term at which the motion for rehearing in the main case was acted upon by this court *in banc*. Their said motions for discharge have never been acted upon and will be first considered.

Neither the provisional prohibitory order in *State ex rel. Merriam v. Ross*, nor the final judgment of this court in that case undertook expressly to deny or abridge the right of Leo Doyle to invoke the jurisdiction of any other court than that named in the order and judgment, to wit, the Cape Girardeau court of common pleas. The provisional order was in these words:

"Now on this the —— day of July, 1893, comes the said Edwin G. Merriam and presents to the undersigned chief justice of the supreme court of Missouri, in vacation, his suggestion for a writ of prohibition (which said suggestion has heretofore been filed with the clerk of the said supreme court) to be directed to the said Alexander G. Ross, judge of the Cape Girardeau court of common pleas, and to Louis Houck, as president of the

St. Louis, Cape Girardeau & Fort Smith Railway Company as well as receiver thereof, The St. Louis, Cape Girardeau & Southern Railway Company, Leo Doyle, The Mercantile Trust Company and Edward Hidden, prohibiting them and each of them from further pursuing and holding cognizance of pleas in a certain case in said court, wherein the said St. Louis, Cape Girardeau & Fort Smith Railway Company is plaintiff and the said Mercantile Trust Company, Leo Doyle, and Edwin Hidden are defendants, the same being a civil action for the purpose of appointing a receiver of all the assets of the said St. Louis, Cape Girardeau & Fort Smith Railway Company and the undersigned judge having seen and heard the suggestion and the record filed therewith on consideration thereof doth order that the said Alexander Ross, judge of the Cape Girardeau court of common pleas and the said Mercantile Trust Company, Edward Hidden and the said Louis Houck appear before the honorable supreme court of Missouri on the tenth day of October, 1893, and show cause if any they have why a writ of prohibition should not issue, as prayed in the suggestion of said Merriam.

"Witness my hand the 27th day of July, 1893.

"FRANCIS M. BLACK,

"Chief Justice, Supreme Court,

"State of Missouri."

It was obviously not within the proper scope of that order or the judgment resulting from that proceeding to perpetually enjoin Leo Doyle from seeking the aid of any other court of competent jurisdiction to adjudicate upon the rights he claimed in respect to the subject-matter of that suit. It can not certainly be asserted that the said provisional order or the subsequent judgment purported to put Doyle under any such restraint.

It was held by this court in the principal case that

the Cape Girardeau common pleas court had no juris-
diction to appoint a receiver for said railway company
in the action commenced therein for that purpose by
said railway, a power to do so having been asserted by
said common pleas court.   But it is evident that the
judgment of this court denying the common pleas
court jurisdiction of an *ex parte* application for a re-
ceiver upon the ground that such a proceeding was not
a suit within the contemplation of the law, could not
logically or necessarily have the effect of barring Leo
Doyle from asserting whatever rights he had in or
to the property in question, as trustee, for the several
bondholders, in the several mortgages, creating him
trustee, in a court possessing the authority under the
constitution and laws of this state to hear and deter-
mine such causes.   The determination by this court
that one court has no jurisdiction of a particular pro-
ceeding for the sole reason that it was *not an action*
commenced therein in the contemplation of law, can
not have the effect of depriving all other courts of
jurisdiction of actions commenced therein which do
meet all the requirements of the law in form as well as
substance.

It is a *non sequitur* to say that because a railroad
company can not by itself come into a court and on its
own petition have a receiver appointed to take charge
of all of its property, and when such a court is prohibited
from taking cognizance of such a cause, therefore all
other courts having jurisdiction to foreclose mortgages
and appoint receivers are alike prohibited from assum-
ing jurisdiction of foreclosure proceedings regularly
and formally commenced by a creditor of said railroad.
Such a conclusion is entirely illogical and can, in our
opinion, have no such effect in law.

The questions proposed for decision in the princi-
pal case (122 Mo. 455) were clearly and plainly stated

by our worthy brother, and present chief justice as follows: "Is the power and control which. the Cape Girardeau Court of Common Pleas has assumed and is exercising over the *corpus* and affairs of the St. Louis, Cape Girardeau & Fort Smith Railway Company, through a receiver appointed as aforesaid [i. e., upon the *ex parte* application of the railroad itself], authorized by law? and, if not, has this court power, under the constitution and laws, to prohibit the further exercise of such control, at the instance of relator?"

After a full discussion the conclusion was reached by this court that the proceeding was not a suit and the power to appoint a receiver only existed when a suit was pending, and therefore the appointment of the receiver was void and of no effect. Being void, it was open to the collateral attack of Merriam who was a creditor of said railroad, as appeared by the allegations of his petition for the writ.

It was then held that the Stoddard circuit court had jurisdiction of the action commenced by the relator Merriam against said railway company, Leo Doyle, and The Mercantile Trust Company in said court, on the third day of March, 1893, and was entitled to retain it. Beyond the question of jurisdiction the opinion declined to discuss other questions involved, in these words (*loc. cit.* 462):

"The subsequent proceedings in that court in that case are important only for the purpose of showing that the jurisdiction thus obtained has been retained, asserted, and maintained from the beginning. Whatever irregularities, if any, that may have occurred in the exercise of that jurisdiction, can be corrected only in that court; and, to insure such correction, whatever questions may arise as to the manner of its exercise by that court may be determined here on appeal or writ of error, *but can not be the subject of the present inquiry,*

*which goes no further than to the jurisdiction of these two courts.''*

The office of a writ of prohibition is to suspend all action and prevent any further proceeding in the prohibited direction.

In the principal case all that was sought at the hands of this court was to prohibit the Cape Girardeau court of common pleas from further exercise of the power it had assumed it possessed, under the act creating it, of hearing and determining the cause, then pending therein, and likewise the several parties to said proceeding from taking *further steps in that action.*

It was clearly within the jurisdiction of this court to hear and determine the question whether said court was in that case exceeding the jurisdiction prescribed for it by the law of this state, but it would be an unusual exercise of our own jurisdiction to extend that extraordinary writ, issued for that purpose alone, so as to prohibit actions in other courts which were not open to criticism either as to their form or the subject-matter thereof and clearly within the jurisdiction of such other courts.

In *United States v. Hoffman,* 4 Wall. 158, the supreme court of the United States, through Judge MILLER, discussing a suggestion made in that case that although the district court had complied with the provisional rule and the particular case in which the rule had been granted had been dismissed, there were still other cases in said court of the same character, and the rule ought to be made peremptory, said (*loc. cit.*, p. 162): "The suggestion that there are or may be other cases against the relator of the same character can have no legal force in this case. * * * A writ in this case could not restrain the judge in the other cases by its own force, and could affect his action only so far as

he might respect the principle on which the court acted in this case."

While, therefore, this court had the power to adjudge that the common pleas court in that case was exceeding its jurisdiction, this court could not extend its own jurisdiction by enlarging the scope of the writ of prohibition beyond all precedent by employing it to settle the conflicting pretensions of rival receivers, each claiming priority of right so long as each of the courts appointing them had jurisdiction to make the appointments and to deal with the subject-matter. The supreme court of the United States in *U. S. v. Hoffman*, *supra*, approved the common law case of *Hall v. Norwood*, Siderfin 166, in which it was held that "possessions are never taken away or disturbed by *prohibitions*." The writ was never designed to be used as a short cut to reach a decision, in the court of last resort, of clashing claims based on conflicting process of the trial courts. Its office is preventive rather than remedial.

In *Thomson v. Tracy*, 60 N. Y. 31, the court of appeals defines the scope and office of the writ. Says that court: "It has a proper but a restricted and limited office, and it can not be enlarged so as to bring within its scope and operation questions merely collateral or incidental to its direct purpose, or more or less intimately connected with such purpose and object. It can not be made a drag net by means of which all controverted and litigated questions between individual suitors may be brought into court and tried and determined." * * * The "statute does not change the character of the writ or permit any question except that of jurisdiction to be tried in the proceeding *inaugurated by it*. It * * * can not take the place of a writ of error, or other proceeding for the review of judicial action, or of a suit in equity to prevent or redress fraud. (*People v. Seward*, 7 Wend. 518.)"

In *Ex parte Pennsylvania*, 109 U. S. 174, Chief Justice WAITE, speaking of the proper function of this writ said: "The evident purpose of this application is to correct a supposed error in a judgment of an admiralty court on the merits of an action. That can not be done by prohibition. The remedy, if any, is by appeal." *Hull v. Superior Court*, 63 Cal. 179; *More v. Superior Court*, 64 Cal. 345; *Ex parte Roundtree*, 51 Ala. 51; *Mastin v. Sloan*, 98 Mo. 252; *State ex rel. v. St. Louis Ct. of Appeals*, 99 Mo 216.

If it had been proper for this court to have entered into an examination of the merits of the cases pending in the Stoddard or Cape Girardeau courts and the right of possession of said railway property, it would have been necessary to determine as has not yet been determined, what effect should have been given to the plea of tender and payment of all the interest due on the indebtedness which formed the groundwork of the Merriam suit in Stoddard county.

In *Philips v. Bailey*, 82 Mo. 639, this court unanimously held that tender before sale of the interest due without the principal is sufficient to prevent a sale by a trustee under a deed of trust, although the deed provided that in case of failure to pay the interest as it becomes due, the entire debt, principal and interest, should mature and the property be sold to pay the same. That to permit a sacrifice of the owner's rights after such a tender would savor of oppression. And the same conclusion was reached in *Whelan v. Reilly*, 61 Mo. 565.

In *Railroad v. Soutter*, 2 Wall. 510, the supreme court of the United States, Judge MILLER delivering the opinion, held, in a foreclosure proceeding in which a receiver had been appointed, that a tender of the debt due gave the mortgagor an *absolute* right to his property, and a discharge of the receiver. Said the

court (p. 522): "It is a right which the party can claim; and if he shows himself entitled to it on the facts in the record, there is no discretion in the court to withhold it."

In the principal case in this court it was shown by the return that the railroad company had tendered the full amount due on its bonds held by relator, but that tender was not considered by this court. In our opinion it was not competent for this court in the prohibition case to determine in this court the right of the receiver appointed by a court other than the common pleas court to take possession of the railroad property covered by various mortgages thereon, and especially in view of the nature and extent of the lien sought to be enforced and the remedy asked in the Stoddard circuit court.

This court has held in *State ex rel. Klotz v. Ross*, 118 Mo. 23, that the original appointment of Klotz as receiver by the Stoddard circuit court had been set aside and vacated and the validity of any subsequent supposed order looking to the same end was not discussed by the opinion of the majority of this court in *State ex rel. Merriam v. Ross*, 122 Mo. 435.

The order made by Judge Wear in vacation of the Stoddard circuit court after that court had in term time set aside his provisional order of appointment of March 3, 1893, and after affidavits for change of venue had been filed in said court, based upon allegations of prejudice on his part, and continued until the next regular term of said court, was not necessarily rendered valid because the Cape Girardeau court of common pleas had no jurisdiction to make the appointment of Louis Houck as receiver. The invalidity of the common pleas receivership did not and could not of itself vest the right of control of this railway property in the receiver of the Stoddard circuit court and

State ex rel. v. Ross.

so confirm his disputed appointment or make it an adjudicated. matter. That question we take it may still be open for review by this court on appeal or writ of error from the judgment of that court. The order in the principal case should not receive such a construction as would hereafter preclude inquiry into the regularity or lawfulness of an appointment made under such circumstances.

We are, therefore, of opinion that in so far as the judgment of this court purported to determine the standing and right of the receiver of the Stoddard county circuit court by adjudging that he was the "*de jure*" receiver of that court, which may be assumed (as that court had appointed *only one* receiver), that judgment was improvidently entered, and should not *to that extent* be enforced, but that it should be modified by eliminating that portion of said final order. This we hold may be lawfully done upon the motions now pending which were filed at the term at which the judgment was rendered and the motion for rehearing denied.

For these reasons we do not think the defendants were guilty of contempt of this court by taking part in the proceedings of the Cape Girardeau circuit court, and they should be discharged from the first citation and also from this last rule based upon the same facts. The rule is discharged. BARCLAY, BURGESS, and ROBINSON, JJ., concur. BRACE, C. J., SHERWOOD and MACFARLANE, JJ., dissent.